### No. 2180.—JOHN WEST v. AR. MILTENBERGER.

The evidence in this case shows that during the year 1862, while Confederate notes were the only circulating currency in the Southern States, that B, a commission merchant in the city of New Orleans, had a lot of Confederate money in his hands to the credit of A; that, at the request of A, B, the merchant, addressed a letter of credit to C, the creditor of A, authorizing him to draw for the amount of the indebtedness of A; that C did draw on B for a portion of the indebtedness of A, and received the amount in Confederate money. C, the creditor of A, now brings suit against B for the amount of the indebtedness of A, disregarding the transactions under the letter of credit whereby he had received a portion of his debt in Confederate money.

Held—That under this state of facts B, the merchant, can only be considered as the agent of A to pass over the Confederate money in his hands belonging to A to his creditor, and he can not, therefore, be held liable to C on his assumpsit of the debt of A, which could only be discharged in lawful currency.

APPEAL from the Sixth District Court, parish of Orleans.    *Cooley, J. Hays & New*, for plaintiff and appellee.    *Cooley & Phillips*, for defendant and appellant.

This case was tried by a jury in the court below.

WYLY, J.    The defendant has appealed from a judgment on the verdict of a jury against him based on the following instrument, viz:

"NEW ORLEANS, February 3, 1862.

John West, Esq., Lumpkin, Georgia:    *Dear Sir*—In accordance with the instructions of Doctor J. T. Nolan, of West Baton Rouge, I have placed to your credit six thousand five hundred dollars ($6500), which amount I hold subject to your order.          Yours respectfully,

(Signed)                              AR. MILTENBERGER."

The defense is that the consideration of the letter of credit was Confederate money.    In support of this plea the defendant attempts to prove that he was authorized by his constituent, Nolan, to sell his sugar crop for Confederate money, that Nolan had no other funds in his hands, and when he gave the letter of credit to the plaintiff as requested by Nolan, the motive or consideration to him was Confederate money.

Assuming that such was the case, we do not think the defense a valid one.    The plaintiff is not in any manner connected with this Confederate transaction: he swears he never believed that the consid-

eration in the stipulation between Nolan and the defendant was Confederate money; the debt which he held against Nolan was not for that unlawful currency; he is simply trying to collect a valid and lawful debt against the defendant, his delegated debtor.

The defendant argues that under the authority of the Union Bank *v.* Bowman, 9 An. 196, he can set up equities between him and Nolan, with whom the stipulation was made in favor of the plaintiff. Certainly he can. But the defense urged by him is not based upon any equities existing between the contracting parties; it is based upon immorality. If the plaintiff had taken part in the transaction resulting in the letter of credit declared on, the immorality thereof might be an effectual bar to his recovery, the policy of the law being to leave guilty suitors where they have placed themselves in such contracts. But he did not take part in the immoral·dealing complained of, nor was he aware thereof.

However immoral the consideration of the stipulation between the defendant and Nolan may have been, the legal obligation which arose out of it or subsequent to it, in favor of the plaintiff, now sought to be enforced, was a lawful one.

As to the plaintiff, the undertaking of the defendant to pay the debt due him from Nolan was not immoral; his debt against Nolan being lawful, the delegated debtor's obligation in his favor was likewise lawful.

·The defense urged is practically this: The defendant ought not to be compelled to discharge his obligation to the plaintiff, based on the letter of credit, because before that obligation was incurred, there was a contract between him and Nolan, in which, for a sum of Confederate money, he agreed to undertake the payment of this debt for Nolan.

Now the defendant is not sued by Nolan to compel him to make good the assumption of the debt as agreed upon, for Confederate money. That contract was executed, on the part of Nolan, by paying the Confederate money, and on the part of the defendant, by making the assumption or giving the letter of credit to the plaintiff. We therefore think the obligation of the delegated debtor to the plaintiff, evidenced by the letter of credit, is not tainted with immorality, and that it can be enforced.

Judgment affirmed

## ON REHEARING.

TALIAFERRO, J. A review of this case inclines us to think there was error in the deductions drawn from the evidence in our first examination of it. Nolan, about the time he instructed Miltenberger

to place $6500 to the credit of West, had evidently no other than Confederate money in his hands. Many letters of Nolan written to his merchant during the latter part of the year 1861 and the early part of 1862 establish this beyond all doubt. He spoke of Confederate money as the prevailing currency—expressed his confidence in the success of the rebellion—was entirely willing to receive and did receive the proceeds of sale of his sugar crop of 1861, in Confederate money. The testimony of Collens, the clerk of Miltenberger, abundantly establishes and confirms the fact that Nolan had no other currency of any kind in the hands of Miltenberger than Confederate money. In regard to the payment of Nolan's debt to West, Miltenberger can not be considered in any other light than as agent of Nolan to pass over to West a certain amount of Nolan's Confederate money. He was not the delegated debtor of West nor did he assume to pay any debt for Nolan. Nolan under date of February, 1862 writes to Miltenberger thus: "Please place to the credit of John West Esq., Lumpkin, Georgia six thousand five hundred dollars, and wrote to him that that amount is subject to his draft." The next day Miltenberger writes to West: "In accordance with instructions of Dr. J. T. Nolan, of West Baton Rouge, I have placed to your credit six thousand five hundred dollars, which amount I hold subject to your order." Then we think it beyond doubt that Nolan intended and expected the six thousand five hundred dollars to be placed to the credit of West, to be part of his Confederate money in the hands of Miltenberger, and that Miltenberger did place that sum to the credit of West in Nolan's Confederate money. He had no other kind of money belonging to Nolan in his charge, and when there was a universal suspension of specie payments everywhere throughout the Southern States, and Confederate money the sole and exclusive currency in this country, it is not to be presumed that when, under the instructions of Nolan, he wrote to West that he had placed six thousand five hundred dollars to his credit, that he meant any other kind of currency than Confederate money. Under the state of things then existing as to currency, the conclusion is not to be avoided, that West knew, as everybody else knew, of the then universality of Confederate money as currency in the Southern States, and that he did not expect payment in anything else. But the record shows that West did receive five thousand one hundred dollars of the amount placed to his credit, and in this manner. He drew a draft on Miltenberger for five thousand one hundred dollars, and sold the draft to a Georgia bank and received the amount in Confederate treasury notes. This is what he said himself in answer to an interrogatory. His purposes did not require him to draw for the whole amount in Miltenberger's hands, and the balance remained without appropriation and Miltenberger has it yet in his possession, having preserved in kind the Confederate paper money

which by Nolan's directions and sanction he had received in payment for his crop of sugar. The pretension of West now, after that ephemeral paper currency has become utterly worthless, that he never believed that Nolan deposited Confederate money to his credit with Miltenberger, can not have much weight against the aggregate mass of testimony in the record which goes to show the contrary.

For these reasons it is now ordered that our former decree in this case be annulled and set aside, and it is further ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed. It is further ordered that this suit be dismissed at plaintiff's cost, and that judgment be rendered rejecting the plaintiff's demand.

Mr. Justice Wyly adheres to the former opinion of the court.